**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AGUSTIN FLORES APODACA,<br><br>A/K/A EL NINO,<br>A/K/A EL BARBON,<br>A/K/A EL INGENIERO<br><br>Defendant. | ) | **CRIMINAL NO.: 12-CR-116 (BAH)**<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE SEPARATION ORDER** |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE SEPARATION ORDER**

The United States of America, by and through the undersigned attorney, hereby files its Opposition to Defendant's Motion to Vacate Separation Order filed on December 17, 2016 (Docket Document #26). The Government submits that its separation request and the resulting separation order of the Defendant from his brother, Panfilo Flores Apodaca, by the District of Columbia Department of Corrections is both constitutional and proper. Accordingly, the Government requests that the Court deny Defendant's Motion.

## I. FACTUAL BACKGROUND

On May 2, 2012, a Grand Jury sitting in the United States District Court for the District of Columbia returned a two-count indictment against Defendant Agustin Flores Apodaca charging conspiracy to distribute cocaine, methamphetamine, heroin, and marijuana for importation into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963; use and possession of a firearm in

furtherance of drug trafficking, in violation 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(B)(ii); and aiding and abetting, in violation 18 U.S.C. § 2. Defendant was arrested in Mexico in July of 2012 and subsequently extradited to the United States on October 20, 2015, for prosecution. On March 13, 2014, Defendant's brother, Panfilo Flores Apodaca ("Panfilo"), was similarly charged in a separate indictment filed in Criminal Case No. 14-CR-57-BAH, for his role in the same criminal conspiracy as Defendant and other members of the targeted international drug trafficking organization. Panfilo was arrested in Mexico on April 8, 2015, and subsequently extradited to the United States on October 8, 2016, for prosecution. Neither Defendant nor Panfilo challenged their pre-trial detention, and they were both remanded to the custody of the United States Marshals Service ("USMS") respectively.

On October 6, 2016, the Government requested that the USMS keep Panfilo separate from Defendant while in pre-trial detention and during transport to and from court.[1] Currently, both Defendant and Panfilo are housed separately by the District of Columbia Department of Corrections ("DOC") at the D.C. Jail. On December 17, 2016, Defendant filed the instant Motion, challenging the Government's separation request and the resulting DOC separation order.

## II. LEGAL AUTHORITY AND ANALYSIS

In his Motion, Defendant challenges the Government's separation request, claiming it is unreasonable and unnecessary, and that it imposes an unconstitutional burden on Defendant's due process right to prepare for trial. Defendant claims he was entitled to notice and an opportunity to be heard regarding the separation. Defendant also claims that neither he nor Panfilo want to be

[1] A copy of the Government's request to the USMS is attached to this Response as Exhibit 1. The names of several inmates who are not the subject of Defendant's instant Motion have been redacted.

separated from each other. Finally, Defendant claims the separation is punitive.

In response, the Government argues that the requested separation of Defendant and Panfilo is necessary, proper, and constitutional given the nature of the criminal charges and the current procedural posture of the case. Courts should defer to those who manage the day-to-day administration and operations of pretrial detention facilities, and Courts should not interfere with pretrial restrictions on conditions of confinement and classification categories, as long as the particular conditions or restrictions are reasonably related to a legitimate governmental objective and are not punitive, and do not impede the Court from administering justice. *See Bell v. Wolfish*, 441 U.S. 520, 535-540 (1979); *U.S. v. Medina*, 628 F.Supp.2d 52, 54-55 (D.D.C. 2009). Viewed in this light, the DOC's Policy and Procedure governing separation cases, which allows prosecutors and other law enforcement officials to request inmate separation, does not offend due process. *See* District of Columbia Department of Corrections Program Statement No. 4353.3B, "Separation Cases," effective June 5, 2013.

**A. Legal Authority**

The U.S. Supreme Court has held that detention facilities are generally entitled to deference regarding day-to-day administration and operation. *Bell*, 441 U.S. at 531 ("[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration" and it would "not [be] wise for [courts] to second-guess the expert administrators on matters on which they are better informed." (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974))). However, the Federal Courts have jurisdiction to grant relief to pretrial detainees when the actions of a detention facility violate the Constitution or impede the administration of justice. *See Turner v. Sarfly*, 482 U.S. 78,

84 (1987); *Bell*, 441 U.S. at 535-40; *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974); *Medina*, 628 F.Supp.2d at 54-56. Thus, with regard to day-to-day administration and operation of pretrial detention facilities, the courts are only concerned with whether a "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective"; if so, then there is no violation of due process and the courts should defer to the detention facility. *Bell*, 441 U.S. at 538-39; *Medina*, 628 F.Supp.2d at 54-55. Likewise, absent an adjudication of guilt, the Due Process Clause prohibits pretrial restrictions on conditions of confinement that constitute "punishment", but when such pretrial detention restrictions are reasonably related to a legitimate governmental objective, then they do not, without more, amount to punishment. *Bell*, 441 U.S. at 535-540; *Medina*, 628 F.Supp.2d at 54-57 (finding the DOC's classification of the defendants did not appear "to have been so 'arbitrary' and not 'rationally related to a legitimate governmental interest' that the Court can conclude that DOC's proffered reasons for classifying the defendants as maximum were actually a pretense for punishment.")

In *U.S. v. Medina*, the Court held that it would defer to the DOC's internal administration and operation procedures regarding pretrial detainees—in that case, inmate security and risk classification decisions—unless the decisions were punitive, were so arbitrary that they were a mere pretext for punishment, or were "infecting the Court's ability to administer justice because the defendants [were] being denied access to counsel or to discovery." 628 F.Supp.2d at 58. In addition, the Court acknowledged that, although there had been some "hiccups" in the past, the DOC had assured that inmates in maximum custody in the jail maintained their constitutionally-protected rights to visitation, access to the law library, communication with legal counsel, and phone calls, among other rights. *Id.*

The DOC has established procedures for "separating inmates from one another when required for their safety or the secure and orderly operation of the facility where they are housed." District of Columbia Department of Corrections Program Statement No. 4353.3B, "Separation Cases", § 1 (Attached as Exhibit 2.) The procedures set forth a non-exhaustive list of factors to consider in identifying an individual as a separation case, including, *inter alia*: "Inmates for whom there is no identifiable threat, but who are to be separated from other at the request of the courts, prosecutors or other law enforcement officials." DOC Program Statement No. 4353.3B, § 9c ("Separation Factors"). In addition, the procedures mandate that the identification of an inmate as a separation case must be based on documented information that may include "police reports, orders by Superior Court or U.S. District Judges, letters from prosecutors, institution investigative reports, or any other notification from a law enforcement agency." DOC Program Statement No. 4353.3B, § 10a ("Separation Order") The procedures further provide that court-ordered separations and prosecutors' requests for separations do not require any referrals to the Housing Board and can only be lifted by the requesting authority. DOC Program Statement No. 4353.3B, § 11a ("Procedures – Court Ordered Separations"). Finally, the procedures caution DOC intake staff not to divulge the names of separatees. DOC Program Statement No. 4353.3B, § 11b3 ("Procedures – Intake Screening").

**B. Argument**

Defendant and his brother, Panfilo, are charged in separate indictments filed in separate criminal case numbers. Although the Government alleges both Defendant and Panfilo were part of the same criminal drug trafficking conspiracy and plans to move for joinder of the two cases for

purposes of trial and pre-trial hearings, the cases remain separate at this time. While Defendant challenges his pretrial detention separation from Panfilo, Panfilo does not challenge his separation from Defendant and, in fact, has filed a notice of his position in Criminal Case No. 14-CR-57-BAH, in which he notifies the Court he is "constrained from asking the court [to] lift the separation order at this time." *See* Position as to Agustin Flores Apodaca's Motion to Vacate Separation Order in Case 12CR116, Docket Document #15, filed on December 21, 2016, Criminal Cause No. 14-CR-57-BAH. In the notice, Panfilo, through counsel, states he is "currently reviewing the discovery and has not made a decision as to how he intends to proceed in this case." Panfilo also alerts the Court that he is actively seeking retained counsel and does not wish to make a decision until he has done so. Thus, contrary to Defendant's assertion in his Motion, Panfilo does not wish for the separation order to be lifted at this time.

Previously, before a status conference hearing held in this matter, the Government discussed the separation order with defense counsel and the Government indicated it would seek to lift the separation order between Defendant and Panfilo. During the hearing, the parties raised the separation order with the Court. However, the Court withdrew from any discussion regarding DOC separation procedures or classification, instead requesting that the parties confer with each other and that defense counsel speak with DOC officials.

Since that time, the Government has conferred with counsel for both Defendant and Panfilo regarding resolution of their respective cases. Defendant has indicated his desire to proceed to trial. In contrast to this, as mentioned above, Panfilo is still reviewing discovery and considering how he intends to proceed in his case. In light of this, the Government believes the separation order continues to be both necessary and proper. As with any case involving alleged co-conspirators, the Government is concerned with the possibility of intimidation, undue influence,

or limiting of Panfilo's options for the resolution of his case. Panfilo is still engaged in discovery review and negotiation with the Government, and therefore pretrial separation from an alleged co-conspirator is proper and necessary to ensure that all avenues of case resolution remain available.

The DOC has implemented procedures for the separation of pretrial detainees. Inmates may be separated at the request of the courts, prosecutors, or other law enforcement officials. Here, the Government requested Panfilo to be separated from Defendant. Defendant argues that the DOC procedures give the Government prosecutors "a complete delegation of authority" and that the Government has used the authority to punish Defendant. However, the separation order does not punish Defendant and therefore does not violate the Constitution. Likewise, the separation order does not impede the administration of justice. Because of this, the Court should defer to the pretrial detention facility's separation procedures.

Here the particular condition or restriction of pretrial detention—separation from an alleged co-conspirator—is reasonably related to a legitimate governmental objective: protection from potential intimidation and undue influence or restriction of case resolution options. The separation determination is neither punitive nor so arbitrary that it is a mere pretext for punishment. In addition, the separation order does not deny Defendant access to legal counsel or discovery or the ability to prepare his case for trial. The separation order does not prevent Defendant's legal counsel from conferring, consulting, or even strategizing with Panfilo's legal counsel. And finally, the separation order does not impede Court's administration of justice in any way.

Lastly, Defendant claims the procedures for separation "have taken place in secret" and that Defendant did not receive notice of or a copy of the separation request and did not receive an opportunity to be heard. However, the Defendant fails to identify any authority which requires a separation request to be disclosed to the separatees. As long as pretrial conditions of confinement

and restrictions are neither arbitrary nor punitive, and are reasonably related to the need to maintain order at detention facilities and to ensure the safety of inmates and staff, they are constitutional. *See Bell*, 441 U.S. at 538-39; *Medina*, 628 F.Supp.2d at 55.

Oftentimes, the underlying need for separation cannot and should not be disclosed for safety purposes. This is true in the case of cooperating defendants or witnesses who will testify at trial. DOC's separation procedures recognize the need for caution, as they direct DOC intake staff not to divulge the names of separatees. *See* DOC Program Statement No. 4353.3B, § 11b3 ("Procedures – Intake Screening"). Here, the Government's separation request filed on behalf of Panfilo included inmates other than Defendant. Because of this, the Government believes disclosure of the unredacted separation request would put individuals other than Defendant and Panfilo at risk. The Government submits that it has no duty to disclose the actual separation request to the Defense. However, the Government has attached a redacted version of the request as Exhibit 1.

## III. CONCLUSION

At this time, alleged co-conspirator Panfilo is not requesting that the Court lift the separation order. In addition, the separation is reasonably related to a legitimate governmental objective, and as such is neither arbitrary nor punitive. Finally, the separation order does not impede Defendant's ability to prepare his case for trial nor the Court's administration of justice in this matter. For all these reasons, the Government respectfully requests that the Court defer to the DOC's separation procedures and deny Defendant's Motion.

Respectfully submitted,

Arthur G. Wyatt
Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By: _/s/_________________________
Michael M. Waits
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division / U.S. Department of Justice
145 N. Street, NE
Washington, DC 20530
Tel: (202) 353-9480
Michael.Waits@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22st day of December, 2016, I served a copy of the forgoing by ECF on Robert Feitel and Rene Sotorrio., who is counsel of record for the Defendant.

By: _/s/_______________________

Michael M. Waits
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division / U.S. Department of Justice
145 N. Street, NE
Washington, DC 20530
Tel: (202) 353-9480
Michael.Waits@usdoj.gov